## Harris *vs.* Knickerbacker.

A *specific performance* will not be decreed where there is a variation between the *terms* of the contract as set forth in the bill, and as admitted by the answer, *essentially affecting the contract* ; as where the bill alleges that the purchase money was to be paid in seven annual instalments, *with interest annually* from the date of the contract, and the answer wholly denies that *interest* was reserved by the contract, although it admits that the purchase money was to be paid in seven annual instalments ; but if the variation in the *terms* does not enter into the substance of the contract, a decree will be made.

The contract admitted by the answer or proved by the testimony must correspond with the contract set forth in the bill, or a specific performance will not be decreed.

The *statute of frauds* may be relied on in defence to a bill for specfic performance, although the defendant admits the agreement, if he insists upon the statute in his answer ; but where he admits the agreement, and neither pleads the statute nor insists on it in his answer, he is deemed to have renounced the benefit of it.

The defendant may either plead that the contract was not in writing, or insist upon that fact in his answer ; if he denies the contract set forth in the bill, the complainant must prove a *written contract,* or he will fail in his suit.

A defendant cannot avail himself of the statute of frauds, although the bill admits the contract to be by *parol,* if 'the bill, besides the agreement, contain matter avoiding the bar created by the statute, such as *part performance.*

*Possession* of land taken by the vendee, and continued for upwards of eight years, although not provided for by the contract, is an act of *part performance,* taking a case out of the statute, if it satisfactorily appear that such possession was in pursuance of the contract.

Where, from the answer of the defendant, it appears that there was a valid and subsisting agreement between him and the complainant, but variant from that set forth in the bill, the complainant will be allowed to *amend* his bill as to the terms of the contract, so as to conform it to the admission of the answer, upon such terms as to costs in the court below as the chancellor shall direct.

APPEAL from chancery. Knickerbacker filed his bill for a specific performance of a *parol* contract by Harris, to purchase a lot of land. The bill which was filed in January, 1824, alleges that on 20th September, 1815, a contract was entered into between the parties, by which it was agreed on the part of Harris, that he should pay to Knickerbacker for the purchase money of a certain farm, or lot of land supposed to contain about 100 acres, the sum of $21,50 per

acre for every acre which the farm upon actual survey should be found to contain, to be paid in seven equal annual instalments, *with the interest annually*, commencing from that date, and would execute and deliver his bond and mortgage on the premises, to secure the payment of whatever portion of the purchase money might be unpaid at the time a deed should be executed to him by Knickerbacker; and on the part of Knickerbacker it was agreed, that as soon as the farm should have been surveyed so that its true contents were ascertained, he would execute and deliver a good and sufficient conveyance of it to Harris. The bill states, that soon after the making of the agreement, and in pursuance thereof, Harris entered into, and still remained in possession of the farm; that on the 8th December, 1815, he paid $333 towards the purchase money, and at various times between that day and the 21st August, 1821, made several other payments on the same account, amounting in the whole to $1677. That the complainant caused several surveys to be made to ascertain the true boundaries of the farm, but the execution and delivery of a deed was delayed *with the assent* of Harris, in consequence of the want of a correct survey; which survey was not obtained until shortly before 21st November, 1822, on which day the complainant executed a full covenant warranty deed of the premises, particularly describing the same by metes and bounds, containing 84 acres and 17 rods of land, which on the 11th September, 1823, he tendered to Harris, demanding payment or security for the balance of the purchase money, and the *interest* thereon, amounting at that time to the sum of $680; with which request Harris refused to comply. The complainant prayed a decree for a specific performance; that Harris pay the balance due, offering to deliver the conveyance executed by him, or such other as should be directed.

The defendant in his answer admits that on the day stated in the bill, he made a contract with the complainant for the purchase of the premises, for which he was to pay at the rate of $21,50 per acre, the quantity to be ascertained upon actual survey, in seven years as follows: $300, or more if he saw fit, in the course of the succeeding winter, and the *residue* in

*seven* annual instalments, to be secured by his bond and mortgage on the premises, on the complainant's conveying the land to him ; and that the complainant should as soon thereafter as conveniently might be, cause the lot to be accurately surveyed, its contents ascertained, and on being paid the sum of $300, convey the same to the defendadnt, taking his bond and mortgage to secure the balance of the purchase money, but *denying the contract* set forth in the bill.    The defendant further admits, that 'relying on the agreement' of the complainant, *he entered into possession* of the premises, and made *the* payments alleged in the bill ; he avers that he repeatedly requested the complainant to cause the land to be surveyed and its contents to be ascertained, and that he reluctantly submitted to the complainant's delay in causing the same to be done.    He further admits, that on the 11th September, 1823, the complainant tendered to him a deed, and demanded from him $680, as the balance of the purchase money, but *denies* that the complainant had caused a true survey to be made of the lot, or its quantity to be ascertained ; and denies that the deed contained a true description of the premises, averring that the premises contained *more* and *different* land than he had agreed to purchase, and denies that the sum of $680, or any part of it, was due for the purchase money.    The defendant further states, that in February, 1824, *after the filing of the bill,* he demanded of the complainant performance of his agreement according to the contract as stated in the answer, and offered to pay any balance that might be due ; that the complainant refused ; and that thereupon he surrendered the possession of the lot to the complainant, and declared the contract rescinded and himself discharged therefrom.    The answer was excepted to for insufficiency ; and among other exceptions, was the following : "For that the defendant hath not answered and set forth according to the best and utmost of his knowledge, remembrance, information and relief, whether by the terms and conditions of the contract for the sale and purchase of the lot, the *interest* to accrue upon the several instalments of the purchase money was or was not to be paid by the defendant to the complainant, and when and

from what time ;" to which the defendant answered, that he denied that any contract was made by him with the complainant for the sale and purchase of the lot other than that set forth in his former answer ; but for answer to the exception said " that he has no knowledge, remembrance or belief that by the terms and conditions of the alleged contract, or any contract or proposition for the sale or purchase of the said lot mentioned for that purpose in the complainant's said bill, that *any interest* was to be paid by this defendant to the said complainant on all or any of the several instalments of the purchase money."

Proofs were taken, and it appeared that the deed tendered by the complainant contained *two acres* of land, which at the time of the making of the contract were in the possession of a vendee of the complainant, under an erroneous survey, but which in fact belonged to the lot agreed to be sold to the defendant, and the possession of which had been acquired by the complainant previous to the tender of the deed. It also appeared by the testimony of *one witness* that the defendant had admitted that *interest* was to be paid on the purchase money after the first payment became due, which was the 20th *December*, 1815, and by another, that when the deed was tendered in 1823, he said there was *too much interest* demanded on the contract.

The cause was heard before Chancellor *Walworth,* who on 7th October, 1828, *decreed*—that in September, 1815, the defendant agreed for the purchase of the premises, for which he was to pay $21,50 per acre in seven equal annual payments *with interest* from 20th *December, 1815 ;* that the defendant having entered into possession and paid a large portion of the purchase money, the agreement was valid ; and that the defendant was not bound to take the *two acres ;* and the chancellor ordered a reference to a master to ascertain the number of acres contained in the farm and the amount due from the defendant ; and on the coming in and confirmation of the report, directed the defendant to pay the amount due, and the complainant to convey, &c. allowing costs to neither party. See the reasons of the chancellor, 1 *Paige,* 209. The defendant appealed.

*L. H. Palmer* and *J. Tallmadge,* for appellant.

*B. F. Butler,* for respondent.

The following opinions were delivered :

By Mr. Justice MARCY. The bill in this case was filed by the respondent for the specific performance of an agreement for the purchase of a lot of land ; and as one of the objections to the decree, and in my view the principal one, is that the chancellor has set up a contract differing as well from that charged in the bill as from that confessed by the answer, it becomes necessary to advert particularly to the contract as described in the pleadings.

The bill states that the respondent was seized and had the fee simple of a certain lot or farm of land in Greenfield, in the county of Saratoga, and that it was agreed, on the 20th September, 1815, between him and the appellant, that the appellant should pay to the respondent, for the purchase money of the farm, $21,50 for every acre which the same should be found to contain on actual survey, to be paid in seven equal annual instalments, with the interest annually commencing from that date, and that the appellant would execute and deliver to the respondent his bond and mortgage on the premises, to secure the payment of whatever portion of the purchase money might be unpaid when the deed should be executed ; and on the part of the respondent, it was agreed that as soon as the farm should be surveyed, so that its true contents were ascertained, he would execute and deliver to the appellant a good and sufficient conveyance of the same. The answer denies the specific agreement stated in the bill, but admits one somewhat different in its terms. The contract admitted was made at the same time as that charged in the bill, is for the same lot and the same price per acre, but the time for the payment of a part of the purchase money is different, and the agreement to allow interest on it is, as I understand the answer, positively denied. $300 of the purchase money, as the appellant states, and more if he should see fit, were to be paid in the winter after the contract was made, and the residue in seven annual in-

stalments to be secured by a bond and mortgage on the prem‑
ises to the respondent, on his conveying the lot to the appel‑
lant. The respondent was to have the land surveyed as soon
as it could be conveniently done. Notwithstanding the dis‑
crepancies in the terms of the contracts, as stated by the re‑
spective parties, they undoubtedly both relate to the same
transaction.

The agreement, the performance of which is sought to be
enforced by this suit, is admitted in the bill not to have been
reduced to writing and signed by the parties. The appel‑
lant contends that the court of chancery had not power to
decree a performance of it. On the part of the respondent,
it is said that the appellant, not having set up the statute of
frauds by *plea*, or *insisted* on it in his *answer*, cannot now avail
himself of the benefit of this defence, even if the agreement
was not evidenced by any writing ; and if he could, that this
is one of those cases where performance will be decreed on
the ground of the fraudulent conduct of the party refusing to
execute.

Has the appellant waived his right to interpose the statute
of frauds by omitting to plead it or insist on it in his answer ?
It appears from the cases that it remained for a long time
doubtful as to the manner in which a defendant could avail
himself of this statute, and under what circumstances he was
deemed to have renounced it. I apprehend that it is now
settled, that if the defendant admits the agreement and in‑
sists on the statute, he can protect himself from a decree for
specific performance, notwithstanding his admission ; but if
he admits the agreement, but neither pleads the statute nor
insists on it in his answer, he is deemed to have renounced
the benefit of it. (6 *Vesey*, 39.) If the bill states generally
a contract which the law requires to be in writing, the court
will presume that it was made with the requisite formalities to
give it validity until the contrary appears. The defendant,
in answering, may either plead that the contract was not in
writing, or insist upon that fact in his answer. If he meets
the allegation of a contract in the bill with a general denial,
and the complainant is put to his proof to establish it, he must

shew a written contract; and if he does not, the evidence to establish the issue will be adjudged incompetent. *Cozine* v. *Graham*, 2 *Paige*, 177. 1 *Marshall's Kentucky R.* 437. But if the bill set up an agreement, admitting it to be by *parol*, or which shall in proof turn out to be by *parol*, the defendant cannot avail himself of the benefit of the statute, provided the bill contains along with the agreement matter sufficient to avoid the bar created by the statute. Such is said to be this case. A part performance by the respondent is alleged, whereby it is insisted that the contract is taken out of the operation of the statute.

The acts of part performance relied on, are the giving possession to the appellant pursuant to the contract, and the repeated surveys to ascertain the quantity of land and to settle the exact boundaries. After stating the contract, the bill charges that in pursuance of it the appellant took possession of the farm. There can be no doubt but that the possession of the defendant was *in consequence of a contract* between the parties; it was continued 8 or 9 years, during which period a large part of the consideration money for the land was paid. But it is said the possession was not *in pursuance of this contract*; that no provision being made by it for giving possession to the appellant, the possession taken by him cannot be regarded as a part performance; that the contract, as stated by the respondent, having no express provision in relation to the possession, the legal effect of such a contract is that possession should follow the deed and be subsequent to it. Upon the face of the contract, as stated in the bill, there are some facts to warrant the inference that the parties did not intend that possession should be deferred till the deed was executed. Both by the allegations in the bill and the admissions in the answer, payments were to be made before the time when it was expected the deed would be given. By the bill, it appears a mortgage was to be executed for whatever portion of the purchase money should be unpaid at the time the deed should be delivered; by the answer, $300, and if the appellant chose, more were to be paid in the winter subsequent to the making the contract, and the residue to be secured by a mortgage to be executed simultaneously with the

deed to the appellant. It is also charged in the bill that the appellant went into possession pursuant to the contract, and had occupied and enjoyed the farm down to the time of filing the bill. The appellant admits in his answer a contract for the purchase of the farm, variant, it is true, in some of its terms, from that set forth in the bill, and a *possession taken under it.* It is said in *Marphet* v. *Jones,* 1 *Swanst.* 181, that to constitute a part performance, so as to exempt the contract from the operation of the statute of frauds, the act done must be unequivocally referrible to the contract. " A party who has permitted another to perform acts on the faith of an agreement, shall not insist that the agreement is bad and that he is entitled to treat those acts as if it had never existed." It is also said in that case, that admission into possession having unequivocal reference to the contract has always been considered an act of part performance. In that case the possession was taken by virtue of a written permission, and the bill was filed for a specific performance of a parol contract, and it was contended that the possession was therefore taken under a different agreement from that sought to be enforced. This objection was not allowed; the court considering that what was written was not different from, but pursuant to the contract of which the court were called on to decree performance. The act alleged as part performance must be such as appears to the court would not have been done unless on account of the agreement. The possession which may be set up as a part performance need not be expressly provided for in the agreement. The language used by *Sugden,* in his *Treatise on Vendors, p.* 72, appears to me to be very explicit. " An agreement," he says, " will not be considered as partly executed, unless the acts done are such as could be done with no other view or design than to perform the agreement, or perhaps, to speak more correctly, with the view of the agreement being performed." It would seem that possession which is without the consent of the vendor, or which he alleges was without his assent, may be set up against him as part performance : and he is not permitted, after he has seen the purchaser in possession and making expenditures upon the land for a long time, to allege he

is not in by virtue of the contract. If the purchaser has no other title to possess the land, his possession is *prima facie* to be referred to the agreement. 18 *Vesey*, 333. The possession in this case is admitted to be on account of a contract for the purchase, and it is not pretended to be referrible to any other cause.

A criticism on the language of this part of the bill was made on the argument, which did not strike me as having much force. It was urged that the bill did not allege any affirmative act done by the respondent. That the appellant entered and took possession pursuant to the contract, is the allegation in the bill; and it is urged upon us as having a different import from a charge that the respondent gave possession to the appellant. I do not recognize the distinction. The two expressions appear to me to be equivalent in legal effect. The possession is, in my judgment, to be considered as taken on account of the contract and pursuant to it; and being thus taken by the appellant and continued so long, it would be a fraud in him now to repudiate the contract. The respondent may therefore allege this possession and its continuance by his permission as a part performance available, to avoid the operation of the statute of frauds. The several surveys which the respondent had made pursuant to a stipulation contained in the contract, were also urged upon us as acts done in part performance of the contract, and were of such a character as to authorize him to set them up to avoid the bar created by the statute. It is unnecessary to say whether such an effect ought to be attributed to them or not; for if the bar is removed by the act of possession given to the appellant, the respondent has a right to establish the agreement he seeks to enforce by parol evidence.

But it is said that the contract differs so essentially from that described in the bill, that the court ought not to have decreed performance. It is very evident that the court cannot decree in favor of a contract not set forth by the complainant; but if the contract proved correspond with that described in the pleadings, it will be established and enforced, even if there be some variance between the terms described and those proved, provided this variance does not relate to

matters of substance. If there be evidence of a contract, but it do not distinctly appear what are the terms thereof, and there seems also to have been an act explicable only on the supposition of an agreement, a court of chancery will exert itself to ascertain the precise terms, and if neccessary for that purpose, will direct a trial at law ; and then, if the agreement can be defined, and the acts of part performance be consistent therewith, it will decree a specific execution thereof. *Jeremy on Eq. Jurisdic.* 438. It is said in *Boardman* v. *Mastyn*, 6 *Vesey*, 470, that in a case where possession having been delivered in pursuance of a parol agreement, and a dispute arising on the terms of the agreement, Lord *Thurlow* thought proper to send it to a master, on the ground of the possession being delivered, to inquire what the agreement was. Lord *Rosslyn* and Lord *Eldon* have thought that this was going a great way, perhaps too far; yet I do not find that this case has ever been expressly overruled.

The court will endeavor to ascertain what the terms are ; but when they have ascertained them, and find they vary essentially from those contained in the bill, the question still recurs, will a performance be decreed according to the proof? In *Boardman* v. *Mastyn*, the plaintiff asked a decree for a lease which the defendant had agreed to give him for twenty one years, which he was at liberty to assign ; the defendant acknowledged a lease, but the tenant was, as he said, to covenant, not to assign : such an agreement as the defendant stated was declared to be a perfectly different one from that alleged by the plaintiff. In *Gregory* v. *Mighell*, 18 *Vesey*, 328, the plaintiff set forth in his bill a parol contract for a lease for certain premises for twenty one years, and asked for a specific execution of it, which was resisted on the ground that the agreement stated in the bill was not the same as that proved by the witnesses. The bill stated that the plaintiff was to pay the taxes and do the necessary repairs, but the witness who was present when the agreement was entered into, did not recollect this part of it. The master of the rolls thought it was not a substantial variation. This decision was put on two grounds : First, the part objected to as a variation was an admission by the plaintiff against himself of

an obligation beyond what he was proved to have undertaken; and secondly, *it was immaterial whether that term was or was not expressed, because the tenants must, without any stipulation, pay taxes and do necessary repairs.* If nothing was in fact said more than was proved in that case, still the contract was as stated in the bill, because the term not proved was implied in what was proved. It was held by Lord Hardwicke, in the case of *The Attorney-General* v. *Day*, 1 *Vesey, sen.* 211, that where an agreement has been partly carried into execution, although a controversy should arise afterwards between the parties as to its terms, yet, if made out satisfactorily to the court it would be decreed, even if there was a variety of evidence in the case. This position of the lord chancellor, as well as the remark of Mr. *Jeremy*, that the court will exert itself to ascertain the precise terms of a contract, are not to be understood as authorities for the court to look after and set up an agreement not charged in the bill. They *relate to agreements actually set forth in the plead-ings*, and clearly proved as set forth, but which are not explicit in their details. Where there is an agreement for a lease of a particular description, *with the usual covenants*, and the parties dispute as to what covenants shall be inserted in the lease, the court will endeavor to ascertain what covenants are usual in such a lease. In the contract now before us, the respondent states in his bill that he was to give the appellant a good and sufficient conveyance. If the point of difference between the parties was as to what constituted a good and sufficient conveyance, the court would endeavor to ascertain what the parties intended by the use of these terms. The leaving that matter uncertain would not render the whole contract so uncertain that a court of equity would refuse to lend its aid to decree a specific execution. So where the agreement was to sell at a fair valuation certain premises, it was said the court will hear evidence to ascertain that valuation. 14 *Vesey*, 407. The case of *Parkhursts* v. *Van Cortland*, 14 *Johns. R.* 15, fully illustrates the doctrine which I wish to present. In that case there was an agreement to sell or lease, and manifest fraud on the part of the defendant in refusing to execute it. The terms and conditions of the

agreement were very uncertain, and the court went almost as far as *Roberts,* in his *Treatise on Frauds,* asserts equity will go : it almost supplied an agreement out of the fraudulent suppressions and misrepresentations of the party deceiving, who is to be considered as virtually agreeing to make good the expectation he has raised. Yet the apppellants in that case, who had such abundant materials in the fraudulent conduct of the defendant, and the justly raised expectations for framing their agreement, were not permitted to make out such an one as they pleased from the facts. They could only go for such an agreement as they had alleged in their bill. Chief Justice *Thompson* said in that case, " that the object of the bill was a specific performance of an agreement. This necessarily presupposes an agreement, and the bill therefore, as it must in all cases of this description, sets out what that agreement was. It accordingly becomes necessary for the appellants to prove the agreement with all requisite certainty, or to furnish such evidence as to warrant the court in presuming the agreement which they claimed to be in force." Mr. *Jeremy* refers to the cases of *Savage* v. *Carrol,* 1 *Ball & Beaty,* 265, and *Buckmaster* v. *Harross,* 13 *Vesey,* 456, to support the position he has laid down. These cases called for the execution of contracts, but the bills were not filed by the parties to the contracts. Funds belonging to the complainants had been appropriated to the purchase of lands, and they called for the execution of the contracts. They did not, as I understand the cases, pretend to detail the terms of these contracts. In the former case the bill prayed for an account of certain funds, and if certain lands should appear to have been purchased with them, that the purchase should be declared to be a trust for the persons entitled to the funds. The court held itself at liberty to enquire into the fact whether there had been a purchase that could be enforced; and finding a purchase, they heard parol evidence of its terms. Neither these cases, nor any other that I have seen, impugn the doctrine, that where a complainant sets forth a particular contract and calls for its execution, and is put to the proof of it, he must establish it substantially as he has de-

scribed it; and cannot claim the execution of it with an essential variation admitted by the answer or proved by the evidence. It is said in the case of *Jordan* v. *Sawkins,* 4.*Brown's Ch. C.* 477, that the court cannot specifically perform an agreement with a variation. The same doctrine is contained in *Lyndsay* v. *Lynch,* 2 *Sch. & Lef.* 1. The original bill in the last case prayed the execution of a lease for three lives; the answer admitted an agreement for a lease for one life; the complainant amended his bill, and prayed for a decree in the alternative for a lease for three lives or one life, and it was refused. Where the plaintiff fails to make out the agreement charged, he cannot resort to that confessed in the answer. 2 *Vesey, sen.* 299. 5 *Vesey, jun.* 452.

I do not think a different doctrine is to be drawn from the case of *Toole* v. *Modlicott,* 1 *Ball & Beaty,* 393. The bill there was for a specific execution of a parol agreement of a lease for the term of three lives. The defendant admitted an agreement with this variation : that the tenant was to give security for the rent. As there was clearly a part performance, the parties went into proof of the agreement. The proof established the agreement charged, but the defendant, when called on to execute the agreement, objected because he had not been tendered security for the rent. A person present offered to become such. The decree provided for security. On a rehearing, the defendant, who had a decree more favorable to him than the agreement had provided for, objected to it, on the ground of the variation, and the objection was not allowed. If the plaintiff had objected to it on the ground that it imposed more than he had contracted to perform, the objection would probably have been listened to. The language of Chancellor Kent, in *Phillips* v. *Thompson,* 1 *Johns. C. R.* 146, is very explicit on this subject. "Unless the plaintiff has clearly established the contract as *charged,* and also a part performance of the *same contract,* he has not entitled himself to the relief sought." To see what application and effect this principle is to have in the present case, we must examine for a moment the testimony, and compare it with the terms of the agreement contained in the bill.

The bill alleges that *interest was to be paid* on the purchase money from the date of the agreement. In the answer the contract is denied to be such as the bill contains, or to be any other than the one the appellant details, in which *no interest* would be demandable on the purchase money at all, if paid at the times stipulated for the payment thereof. By the first exception to the answer, the defendant was required to state according to his best and utmost knowledge, &c. whether *interest* to accrue on the instalments of the purchase money was or was not to be paid, and from what time. In answering this exception he first repeats his former positive denial of any contract for the sale of the lot in question other than that specified in his answer, and then in somewhat of a singular manner, proceeds: "*but for answer to said exceptions, he saith* that he has no knowledge, remembrance or belief that by the terms and conditions of the alleged contract, or any contract or proposition for the sale or purchase of the said lot, any interest was to be paid by the defendant to the complainant, on all or any of the instalments of the purchase money." The chancellor understood the answer not to amount to a positive denial of the agreement to allow interest, but a denial according to knowledge and belief; and decided that the agreement to pay interest might be established by the testimony of a single witness, without corroborating circumstances. I am constrained to differ from him in this view of the case. The appellant denies, with absolute positiveness, the alleged contract which sets up a claim of interest from its date, but admits a contract by which interest would not be payable on the instalments before they fell due. His answer is excepted to, because he has not set forth according to the best and utmost of his knowledge, remembrance, information and belief, whether interest was to be paid. To this exception he replies, and uses the very language, for not using which the exception was taken. He says he has no knowledge, remembrance or belief that interest was to be allowed. Uniting this answer to the exception, with his repeated and most positive denial of the contract on which alone the claim of interest is to be supported, they together amount, in my view, to a positive denial of the agreement to allow interest.

But if I err as to the character of this denial, and allowing that the allegation in the bill in relation to the interest may be supported by the uncorroborated testimony of a single witness, I would ask, is that allegation proved even by a single witness? The proof is that interest was to be paid *after the first payment*, which was to be made on the 20th December, 1815. In any view of the case, then, the allegation that interest was to be paid on the purchase money *from the date* of the agreement, which was the 20th September, 1815, is not supported. But it is said, on the part of the respondent, that the payment of interest is a mere incident to the contract, and a misstatement in relation to it cannot be regarded as a substantial variation. I am not aware, though it may be, that there is a different rule in equity from that which prevails at law in relation to a variance between pleadings and proofs; if there is not, a doubt cannot be entertained that the variance in this case is fatal. A contract to pay a sum of money, with interest from the 20th *September*, would not, in law, be sustained by the proof of one to pay the same sum with interest from the 20th *December*. The rule that prevails in law on this subject might be much relaxed in equity, and still the variance in this case be fatal. The payment of interest is more than an indcient of this contract, it enters substantially into it; it is put forth in the bill as one of the terms of the agreement.

Viewing, as I do, the denial of the agreement to pay interest on the instalments to be positive, there is not in my opinion sufficient evidence to support the decree in relation to the interest. The appellant impliedly admitted, it is true, that interest was due from him, when he told the defendant in the autumn of 1823 that *too much interest* was cast on the account; but this admission would not conflict with his statement of the contract, for as he explains it, he was to pay in the winter of 1815 three hundred dollars and the residue in seven annual instalments. Having failed to pay these instalments as they fell due, he would be legally liable for interest after that period. The testimony of the witness being counterbalanced by the answer, there is nothing left that can authorize us to say that interest was to be paid until it be-

came chargeable on the instalments after they became due. The contract proved and the one charged are, I think, substantially different : by the one, interest is claimed from the 20th September, 1815, on the whole consideration money unpaid; by the other, no interest was payable until after the purchase money fell due, and then only for the time during which there was a default of payment. Some part of this purchase money did not fall due until more than seven years after the date of the contract. On the ground of this variance I think the chancellor should have dismissed the bill, or permitted it to be amended, if that might have been done by the practice of the court. I am therefore of opinion that the decree ought to be reversed.

But as this obstacle, which has embarrassed me, may have appeared, as I hope it has, less formidable to other members of the court than to myself, I will proceed and give my views succinctly on the other points made on the argument.

It was contended that there had been so much delay that the respondent was not entitled to relief in the court below. It is very evident that this delay has been acquiesced in by the appellant so far at least as to break the force of the objection. If he intended to rescind the contract, he should have surrendered the possession.

It was also urged that the respondent was not entitled to a decree for the execution of the contract, because he had not done what it was incumbent on him to do before he could call on the other party to perform. If my views in relation to the interest are correct, this objection is probably sustainable, for though the respondent tendered a deed, he demanded of the appellant more than was due on the contract; but in any other view of the case, I should think the objection untenable.

The respondent was bound to give or tender a conveyance ; he did so ; but it is supposed the tender was ineffectual, because it was such a conveyance as the appellant was at liberty to refuse ; it contained, as is alleged, more lands than were included in the purchase. The two acres which had been conveyed by mistake to Seymour, were certainly a part of the lot purchased by the appellant ; and had he been

*ALBANY,*
Dec. 1830.

Harris
v.
Knickerbacker

Harris
v.
Knickerbacker

seeking the fulfilment of the contract, the respondent having obtained the title thereto by a reconveyance, would have been obliged to convey them to him. If the deed tendered had not included the two acres, the appellant could with propriety, and by just right, have refused it, because it did not include them. 3 *Cowen,* 446. I therefore think the deed offered to the appellant ought to have been accepted; and though perhaps we cannot on this appeal modify the decree in favor of the respondent, yet, if the deed was such as the appellant was bound to accept, we cannot reverse the decree on the ground that the respondent had failed to show that he was entitled to relief at the time he filed his bill. The deed tendered is also considered objectionable, because it contains covenants not specified in the contract. It abundantly answers the description of a *good* and *sufficient conveyance;* and such was the conveyance agreed to be given.

The appellant has called to his aid, in order to overthrow the decree made in this case, the principle of equity, that a purchaser is not compelled to take a disputed title; but it appears to me that the principle is not applicable to this case. The respondent's title is unquestionable; it is what it was understood to be when the contract was made. Some difficulties as to the boundaries were apprehended, and therefore a survey was provided for.

Upon the whole case, therefore, I would find no difficulty in coming to the conclusion to affirm the decree of the court below, was it not for the variance as to the *interest.* I am unable to dispose of that objection in a satisfactory manner, and must therefore vote for a reversal of the decree. But I wish the cause, in case the decree is reversed, may go back to the chancellor, with a view that permission may be given, if practicable, to the complainant below, so to amend his bill as to enable him to obtain a decree for the execution of the contract as it is established. Some of the cases led me to doubt whether such an amendment could be made in this stage of the suit; but I think the remaks of Lord Redesdale, in *Denison* v. *Little,* 2 *Sch. & Lef.* 11, *note a,* furnish an authority for doing so. A bill was filed in that case for a specific performance of an agreement for a lease. The lease, accord-

ing to the statement in the bill, was to the plaintiff alone; the answer admitted an agreement to lease to the plaintiff and another. The plaintiff wished to amend his bill by making the other person co-plaintiff, but it was refused. The chancellor said in giving his opinion, that he knew of no case which allowed an amendment to enable the party to make a *new case.* " I have known," he further observes, " in a case where the answer stated a qualified agreement, the plaintiff to have amended his bill and accepted the agreement as stated by the defendant, and brought his cause to a hearing for performance of it." I hope the principles and practice of the court will allow of the course which I wish to have taken with this cause, in case the decree is reversed.

By Mr. Senator OLIVER. The bill in this cause was filed in January, 1824, for the specific performance of a parol contract for the purchase of a lot of land, made on the 20th day of September, 1815, on the ground of part performance. The defendant, in his answer, denies the agreement as set forth in the bill, and states the contract as he alleges it to have been made. The contract stated in the answer is materially different from that set up in the bill, and the contract stated in the bill is not supported by competent proof.

I deem it unnecessary, from the view which I have taken of this case, to examine how far a complainant can have a decree for the specific performance of a contract different from that prayed for in his bill. It appears to be consistent with sound reason and adjudged cases, that if a complainant file his bill for the specific execution of a contract materially different from that entered into, the defendant is justified in equity in opposing its execution, and the complainant on that bill ought not to have a decree for the agreement set up and admitted in the defendant's answer. The case in 2 *Vesey,* 299, fully supports these propositions; it was for a specific execution of a contract. The defendant set up in his answer and proved by parol (as has been done in this case) a different contract from that in the bill. Sir John Strange, master of the rolls, in giving his opinion on that case on the point now under consideration, says : " I am still of

the same opinion, and that the bill should be dismissed with costs; for it would be very hard upon a defendant, if a plaintiff should unjustly bring him into a court of equity, where defendant should insist on an agreement different from that which the plaintiff sets up, and the plaintiff should reply to the answer and insist on his former demand, and go into long proofs, and afterwards, finding he cannot have the decree prayed for by his bill, should resort to that which the defendant sets up, and insist on a decree for it."

In the case of *Lyndsay* v. *Lynch*, 2 *Sch. & Lef.* 9, the chancellor remarks: "The agreement admitted will not be executed on this bill: to allow this would be opening a door to new frauds; and sufficient frauds have already been practiced on bills for specific performance of agreements." Again, he says: "I conceive that the bill ought to be dismissed, notwithstanding the admissions of the defendant in his answer; the plaintiff having disclaimed that agreement and refused to accept a lease according to it, and even then having endeavored to compel the defendant to perform a different agreement." I cite to this point the cases in 2 *Hovenden,* 6, and 5 *Vesey,* 457.

Again; this was a parol contract for the sale of lands, and therefore void by the statute. It is certain that an action at *law* could not be sustained on the agreement, and it is difficult to see why this statute is not equally binding in *equity.* The power of the court of chancery, then, must rest on other grounds. The specific execution of parol agreements is decreed in chancery for the purpose of preventing fraud. The attempted fraud is the ground of relief, and the agreement should be looked to, in order to ascertain how and to what extent the fraud would be committed, and in what manner it may be redressed. It is clear to my mind, that in order to support a decree in such a case, a part performance at least of the parol agreement should be clearly proved. The plaintiff should prove what the contract was in fact, and the extent of its execution, and what the injury and fraud consists in. 1 *Sch. & Lef.* 41, 433. 3 *Ves.* 712, 713. 1 *Johns. Ch. R.* 131. The chancellor remarks: "The ground of the interference of the court is not simply that there is proof of the existence of a parol agreement, but that there is fraud in

resisting the completion of an agreement partly performed." Again, he says, "I agree with the wise and learned judges who have declared that the courts ought to take a stand against any encroachment upon the statute, and not to go one step beyond the rule and precedents already established."

I will now inquire what the contract between the parties really was, and what was to be done on the part of the complainant to entitle him to a decree, and how far and in what manner he has performed the agreement on his part. From the case it appears that the contract was made on the 20th September, 1815, and was for the purchase by the defendant of the complainant of all that part of lot No. 1, in great lot No. 2, in the 22d allotment of the patent of Kayaderosseras, north of and adjoining lands before sold by the complainant to William Seymour, in the town of Greenfield, in the county of Saratoga ; that the complainant was to survey the lot and ascertain the number of acres it contained, and was to make out and deliver a deed in fee simple, containing the usual covenants ; and the defendant was to pay or secure to pay the complainant, by mortgage on the premises, the amount of the purchase money, in seven annual instalments.

1. An actual survey was necessary to be made, so that the defendant might know how much money he had to pay, and to enable him to perform the agreement; and this survey was to be made as soon as it could be consistently done. 2, A deed in fee, with covenants of warranty, was to be executed ; and this was to be done as soon as the land could be surveyed, and its number of acres ascertained. Until these preliminary acts were done, the complainant had no right to call on the defendant to perform his part of the agreement. Has the complainant performed this agreement ? It was not until about eight years after the contract was made that he pretends that he had performed his part of the agreement. In the bill he states, that on the 11th day of September, 1823, he tendered a deed to the defendant, the execution and delivery of the deed having been delayed in consequence of the want of a correct survey. To me it appears very doubtful whether the complainant ever surveyed the north bounds of the lot according to his agreement. In September, 1823,

it appears the defendant demanded of the complainant a deed of the lot according to his contract; at the same time professing his readiness to fulfil the agreement on his part. The complainant thereupon tendered to him a deed purporting to give a description of the lot in question, stating its contents to be 84 acres of land, and including two acres of the lot before sold to Seymour by deed, but which the complainant has since this contract purchased back. The complainant demanded, as a preliminary to its delivery, the payment for the whole number of 84 acres, with interest from the date of the contract. The defendant refused to take the deed on these terms, saying that he had not contracted to purchase the land contained in the Seymour lot, and that the conveyance was in other respects incorrect. The defendant, as it appears, had, before the deed was tendered, informed the complainant that he should accept of no deed which should embrace the two acres. The bill is filed to compel the defendant to accept this deed and pay for 84 acres. Now, if I am not mistaken, the land sold does not exceed 79 acres. The price was to be $21,50 per acre. The chancellor admits that the defendant was not bound to accept this deed; that it contained more land than was in the original purchase. If this be so, I cannot see by what right or with what justice the chancellor should have referred it to a master to ascertain the true number of acres. This was a matter for the complainant to do without the aid of any court. How can the defendant be considered in default? he was compelled to insist on his rights; his refusals under these circumstances cannot and ought not to be deemed fraudulent. The complainant in this case has not performed his contract, and therefore ought not to have the aid of chancery to compel an agreement never made.

From this view of the case, it would seem unnecessary to cite authorities. I shall content myself with citing a few which bear and appear to me to be decisive on this point. In 2 *H. Blackstone*, 123, it is said, " In *concurrent promises*, the party suing turns his promise into a condition precedent." This rule is of great force here, especially as the party is urging a contract void by the statute. Another rule is, " He

who asks equity, must first do equity by complying with the terms of the contract." In *Randolph*, 411, specific performance of a contract was denied where the party had not performed or offered to perform *before bill filed.* To the same point is 1 *Jacob & Walker*, 333. In 1 *Johns. Ch. R.* 370, the chancellor declares, if the contract is not performed at the time stipulated, he will not aid the party seeking specific execution of a contract, but leave him to his remedy at law. I refer also to the case in 13 *Ves.* 225, as one very much like the present. The errors in the boundaries of this deed and the quantity of land were objected to by the defendant, and mentioned to the complainant long before he filed his bill. I am decidedly of opinion that the complainant is not entitled to the aid of chancery. He had not complied with his agreement prior to filing his bill for a specific performance.

In conclusion, I have only to remark that it is manifest to my mind that the complainant having omitted to comply with the fair and plain conditions of this contract, and having insisted on the payment of more money than was his due by the original agreement, and the payment of which he made a condition precedent to the delivery of the conveyance, the defendant was right in resisting his claim. I consider the interest as forming a substantial part of the agreement, as much so as the price. The complainant therefore has no right to the extraordinary aid of chancery to enforce an agreement never acknowledged or assented to by the defendant.

I am therefore for a reversal of the decree of his honor the chancellor, with costs.

On the question being put, *Shall this decree be reversed?* the members of the court voted as follows:

For *reversal*—Mr. Justice SUTHERLAND, Mr. Justice MARCY, and Senators ARMSTRONG, ENOS, MATHER, McCARTY, McMARTIN, OLIVER, SHERMAN, WARREN, and WHEELER—11.

ALBANY,
Dec. 1830.

Harris
v.
Knickerbacker

For *affirmance*—Senators BRONSON, CONKLIN, DEITZ, GERE, HUBBARD, McLEAN, REXFORD, THROOP, and WATERMAN—9.

Whereupon, after consultation among the members of the court, the following decree was entered :

Counsel having been heard on the part of the appellant and on behalf of the respondent upon the petition of appeal and the answer thereto filed in this cause, and due deliberation thereupon had, and it being considered that the agreement for the sale of the lot of land in the pleadings mentioned, set forth in the bill, and established by the decree of the chancellor, varies materially in its terms, as to the payment of interest on the consideration money from that which appears to this court to have been established by the pleadings : It is therefore ordered, adjudged and decreed, that the decree of the chancellor of the seventh of October, in the year one thousand eight hundred and twenty eight, be reversed, with the costs of this court.   And it is also considered that there was at the time of filing the bill in the court below a valid and subsisting agreement between the parties for the sale of the lot of land mentioned in the pleadings, and which had been in part performed ; and also that the deed mentioned in the pleadings, and which had been tendered in execution of said agreement, was such as the appellant had no right to refuse, it being in accordance with the contract for sale, admitted by the answer ; it is further ordered that the record and proceedings be remitted to the court of chancery, and that the respondent be allowed to amend his bill, by striking out in that part of it which sets forth the contract the following words: "*with the interest annually, commencing from that date.*"   And if he elects so to do within forty days, it is further ordered and decreed that the agreement for the sale of the lot of land described in the deed set forth in the bill be specifically performed, and that it be referred to a master to ascertain the quantity of land and the amount due, and upon payment of that amount with interest, that the respondent deliver the aforesaid deed to the appellant ; and if the respondent does not elect so to do, that then the bill be

dismissed with costs, and without prejudice. And it is further ordered that the chancellor make such disposition of the costs of all or any of the proceedings in the court of chancery as would have been made if the amendment had been in that court.