## JERVIS *v.* SMITH AND OTHERS.

ALTHOUGH in general a bill in this court will not lie, after a party has put it out of his power to fulfil a contract to convey land, when the fact of his having disqualified himself is known to the complainant previous to the filing of the bill, yet where no action could be sustained at law, but a bill might have been supported here, the rule does not apply.  Hence, where a parol contract was sought to be enforced on the ground of part performance, and no action could have been brought for damages, this was held no objection to the bill, although filed after the party contracting had conveyed away the property.   In such a case, the assessment of damages through this court, is the only remedy open.

The possession, when set up as an act of part performance, must be referrable to the agreement.  It must be either delivered by, or taken with the consent of the vendor.  If otherwise obtained, it cannot avail.

Where no other title to possession, and no other origin of it is proven, it is *prima facie* to be referred to the agreement.

If the assent to the possession is denied, and there is no proof of it, the suffering the party to occupy the property for a few months without turning him out, when the property was of trifling value as to profits, and no improvements were put upon it, is not sufficient.

If a defendant admits a parol contract, he must set up the statute.  But not where he denies any agreement.   Then the complainant must prove a valid one.

THE bill was for a specific performance, and the case was submitted on written arguments.

*Mr. Western,* for complainant.

*Mr. Sandford,* for defendants.

THE ASSISTANT VICE-CHANCELLOR :—Jacob Smith demised the premises in question to his wife Judith Smith; and appointed Obadiah Mills and Judith Smith, his executors. Both qualified, but the active duties fell upon Obadiah Mills. The latter entered into a written agreement with Jervis, for the sale of the premises to him, for the sum of $970. This agreement was dated the 19th of April, 1834, and is sufficiently proven by D. B. Bayly. The bill charges that this agreement was authorized, adopted, confirmed, and acquiesced in, by Judith Smith. That in pursuance thereof, he entered into possession and cultivated the land, and spent considerable money in improvements. That he paid the sum of five dollars on account of the consideration money to Mills, and prepared a bond and mortgage before the day fixed for completing the agreement.

It is also alleged in the bill, that after the expiration of the time fixed for the performance, a parol agreement was made between the complainant and Mills, for an extension of the time, by which it was extended from the 1st of November, 1834, to the 1st of May, 1835. That if the complainant paid $400 by the 1st of May, his property at the west end of the village of Jamaica should not be covered by the mortgage. The bill also states what is termed a further extension of the time to the 6th or 7th of May. That on the 4th of May he was at the county clerk's office, where the business had been transacted, and was told that the time had expired.

Judith Smith conveyed the land to Samuel D. Mills, who conveyed to one Richardson, by deed dated the 30th of June, 1835, for $1,800. No part of the consideration was paid, but a mortgage executed for the whole. Richardson has taken possession of the land. Judith Smith had, prior to the first of May, executed and acknowledged a deed to the complainant for the land, which has been since destroyed. The bill also states an offer on the 4th of May, to procure the whole purchase money, and pay it.

The defendant Richardson expressly denies notice of the written agreement made by Obadiah Mills, or of any

verbal agreement, when he purchased. The testimony of Mackniel goes some way to contradict his answer; but I cannot say that it is sufficient to overthrow it, and there is no other witness. Hence, no relief can in any event be had against Richardson. He does not stand as a purchaser fraudulently interfering with the equitable rights of another, of which he had notice. ( *Wadsworth* v. *Wendell*, 5 *Johns. C. R.* 231.) As this result puts an end to the claim for a specific execution of the alleged agreement by a conveyance of the land, and this fact was known to the complainant when he filed the bill, the question arises, whether he must not be left to his action at law.

In *Wiswall* v. *McGowan* and others, (October, 1839,) I examined this point. There a party had made a contract to sell land, and afterwards conveyed it to another. The conveyance was dated and acknowledged before the bill was filed, but not recorded until subsequently. No notice of the conveyance was proven, and the bill stated that the complainant had none. No notice of *lis pendens* had been filed, and an attempt to charge the purchasers with personal notice entirely failed. They were brought before the court by supplemental bill. It was held that the bill could be sustained against the vendor, and that damages could be assessed by a master for his violation of the contract.

In this case, however, the bill was filed after the conveyance, and with knowledge of it. The reply to this objection is, that this is a case of exclusive equity jurisdiction. No action could be sustained at law, even supposing that all the acts of part performance were duly proven. (See *Reder* v. *Hunt*, 1 *Pickering*, 328. *Jackson* v. *Pierce*, 2 *Johns. Rep.* 221.) The party is without redress except he can obtain it here; and therefore I consider it immaterial when the vendor conveyed so as to put it out of his power to perform specifically, or whether the plaintiff when he filed his bill knew of the conveyance. If the only redress is in this court, and the contract would have been enforced had the property remained in the vendor, it follows that damages may

be recovered through the instrumentality of this court. I must therefore examine the case as to the defendant Judith Smith, as if the property had not been conveyed by her. It is clear that the bill, so far as it proceeds upon the written contract of Obadiah Mills, entirely fails. The contract made by him is made as executor. The authority to bind her is wholly denied. The subsequent ratification by her of that agreement is explicitly contradicted, and there is no testimony whatever to establish his power, or her assent.

Then it must rest upon what she does admit, viz.; a verbal agreement made in the early part of the year 1834, that she would sell the premises to the complainant; the bargain to be perfected in the spring of 1834, and he to have possession when the deed was given. She also admits a consent to extend the time of fulfilment unto the 1st of November, 1834. She then avers that after the 1st of November, she declared that she meant to sell at the earliest opportunity, leaving the complainant to come in in common with others, and make the purchase. In April she states that she renewed an application to S. D. Mills to take the property, as she wished to procure the money for a brother to whom it was promised. In March, 1835, she executed a deed to the complainant, but retained it in her possession, and avers she would have delivered it had he paid the money before her sale to Mills. She denies that the agreement was extended by parol from the 1st of November, 1834, to the 1st of May, 1835.

I do not think that the testimony of Mr. Crane affects her answer. He says that he does not recollect distinctly, but he thinks Mrs. Smith told him that the complainant was to pay for the land in the fall of 1834. And he thinks she said the time had been extended, but to what time he does not recollect, saying that it was at the solicitation of Obadiah Mills, and not freely on her part. This may refer to the extension from May to November, but at any rate it is not sufficient to contradict her answer. The written paper signed by Mills being clearly inoperative, and his agreement as to any extension of time after No-

vember, for her fulfilling her parol contract not being ratified by her, the question must rest upon her admissions; and it presents the case of a mere verbal agreement, probably binding down to November, 1834, as she does not plead the statute, and then a willingness on her part to convey the land to the complainant existing down to May, 1835; but no agreement to that effect.

The fact of the complainant's possession is of considerable importance. It is clear that from the spring or summer of 1834, to the spring of 1835, he was in possession, ploughed and sowed the land; cut down some trees, and moved the fence. It is also stated that he had a map made, dividing it into lots. It is also a necessary inference that the complainant was apprized of this possession. She says it was without her consent, and that he was a trespasser. This is a strange assertion. Had she observed that the temporary possession was given under the agreement—that it was consistent with it—and that she did not turn him off after November, because she still left it open to him as well as others to purchase, the difficulty would have been obviated.

After all, however, it must be considered that she barely suffered the possession—not authorized it to be taken. And it is also of importance that there is no proof of any improvement made by the complainant upon the premises. The removal of the fence and cutting down six old trees, seems all that was done. His expenses of cultivating it were repaid, it is to be presumed, out of the produce.

It is the plain result of all the authorities that the possession must be referable to the agreement. (See *Harris* v. *Knickerbacker*, 5 *Wendell*, 644.) The reason of this rule is, that possession, when it is such an act of performance as frees a case from the statute, is a piece of testimony to show the part execution by the vendor. As Lord Eldon says, (*Wiles* v. *Stradling*, 3 *Vesey*, 381.) "The "delivery of possession by a person having possession to "the person claiming under the agreement is a strong and "marked circumstance." Hence the actual delivery of, or the assent to the taking possession must be proven. And

the case before Lord Camden, (*Cole* v. *White*, cited 1 *Br. C. R.* 409,) is much in point. An agreement was alleged for a lease for four years, and the bill charged that the possession was given. Defendant pleaded the statute, and by answer denied that possession *was delivered in part performance, and swore that the plaintiff obtained it wrongfully.* The plea was allowed. In *Morphet* v. *Jones,* (1 *Swanston,* 179,) there was a written authority to a third person to put the plaintiff in possession. See also *Foote* v. *Medlicott,* (1 *Ball & Beatty,* 400.)

The case of *Gregory* v. *Mitchell,* (18 *Vesey,* 333,) furnishes the true principles by which the present question must be governed. Sir William Grant said: " It is " said however, that possession was taken without the de- " fendant's consent; and consequently is not to be con- " sidered as a possession under the agreement. The " plaintiff had no other title to possess the land; and there- " fore his possession is *prima facie* to be referred to the " agreement. As to the defendant's allegation, that it was " without consent, besides that it seems to be disproved by " *Gregory* and *Philcox,* I do not conceive that the plain- " tiff is now at liberty to say that it was a possession " having no reference to the agreement, as he permitted " the plaintiff to remain in possession, and to make ex- " penditure upon the land for eight years before he brought " ejectment. He must have known that the expenditure " was made upon the faith of the agreement, and he can- " not now turn round and say that the plaintiff was a " trespasser."

In the case before me the allegation of the answer is, that it was part of the original parol agreement that possession should not be given until the deed was delivered. That the possession was taken without consent, and the party was a trespasser. I find nothing in the testimony to contradict this, or to show any authority to occupy, or any express assent to the occupation. As to the inference deducible from her knowledge of the possession, I am not authorized against her answer, to hold this sufficient proof of a possession taken under the agreement. But again, as

before observed, her answer and some slight proof of her de-
clarations, supply the whole ground on which any agree-
ment is established.　And certainly, even if the possession
when taken in the summer of 1834, should be held referable
to the agreement then in existence, her positive assertion of
the termination of that contract in November, and her
denial of any agreement subsisting afterwards, makes the
possession disconnected with any agreement, and one
either wrongful, or by sufferance.　It also deserves con-
sideration, that the management of the property appears to
have been left to Obadiah Mills, who, as Shelton states,
probably put the complainant in possession.

The defendant has not pleaded or insisted in her answer
upon the statute of frauds.　She insists, indeed, that she
has been advised that her parol agreement was inoperative,
and she prays that she may have the same benefit of the
facts set forth, as if she had demurred or plead.　I doubt
whether this would have been sufficient; but the reply is,
that she avers the expiration of the agreement in No-
vember, and denies any contract subsisting after that time.
Now if a defendant presents the issue of agreement or no
agreement, the complainant must prove a valid agreement.
It is where he admits a verbal agreement, that he must in-
sist upon the statute.

My conclusion after the best reflection, is, that the com-
plainant is not entitled to relief.　But I am clear it is not
a case for costs.

This result, as to Judith Smith, disposes of the question
as to Samuel D. Mills.　He has a right to avail himself
of any objection which would defeat the suit as to her.

The bill must be dismissed, but without costs.