# HILLSBOROUGH,

## JULY TERM, A. D. 1857.

KIDDER *v.* BARR *& als., Executor and Trustees of* WILKINS.

The answer to a cross bill filed for discovery in aid of the defence, cannot be used by the party making it, unless the complainant in the cross bill shall first produce it in evidence.

Upon motion of the party filing such cross bill, made after an answer, which he does not choose to use as evidence, the bill may be dismissed.

The specific performance of a parol agreement for the conveyance of land may be decreed in equity, unless barred by the statute of frauds.

The death of either of the parties to such a contract does not impair its obligation, and it may be enforced against the heirs and legal representatives.

A part performance of a parol agreement for the sale and conveyance of land, will take it out of the statute.

Payment of the purchase money alone is not such part performance.

Possession by the vendee and improvements upon the land made by him by the consent of the vendor, is part performance.

The defendants' testate, one W., let the complainant have a sum of money, and at the same time took from him an absolute deed of land, and made a parol agreement that he would re-convey the land upon the payment of the money and interest. The complainant subsequently paid the money and interest, and was thereupon let into possession by W. He erected buildings upon the land, received the rents for the same, and paid the taxes for a series of years, until W.'s decease. — *Held,* that a bill could be maintained against the defendants for a specific performance of the contract.

IN EQUITY. The bill was filed at the July term, 1855, against the defendant, Barr, as executor of the last will and testament of James McK. Wilkins, late of Manchester, deceased, and

against the defendants, Woodbury and Currier, as trustees named in the will, to carry out certain objects of the testator, which are not material to be stated.

The bill alleges that on the 18th day of March, 1835, the complainant hired of Wilkins $300, and as security therefor gave him a warrantee deed of certain real estate ; and that Wilkins, upon and after the execution and delivery of the deed, agreed with the complainant that he would re-convey the same premises whenever he should be requested so to do, upon the complainant's paying to him the $300 and interest, or upon his satisfying him for that sum.

That after the delivery of the deed, and between that time and the 20th day of November following, the complainant, from time to time, advanced money and rendered services for Wilkins, until the $300 and interest were paid ; and that Wilkins then acknowledged that the debt was fully discharged.

That the premises so conveyed by the complainant to Wilkins consisted of an undivided sixth part of certain lands, which are described, and that Wilkins owned another sixth of the same. That upon the payment of the $300 and interest, Wilkins, in pursuance of the terms of his agreement before mentioned, promised and assured the complainant that he would convey said real estate to him whenever requested ; and in the meantime it was proposed and agreed between them that the two sixths of the property, then standing in the name of Wilkins, should be owned, held, occupied, possessed and enjoyed by said Wilkins and the complainant in common, and that both should share equally in all the income and profits that should be derived from said real estate, and in all the proceeds that might be received from the sale of any portion thereof, and that both should contribute equally to the payment of all taxes assessed upon the same, and to all the charges, outlays, or expenditures that should be incurred on account thereof.

That the complainant was accordingly admitted by Wilkins into the joint possession and occupation of said real estate, and participated equally with him in the management and disposition

thereof, enjoying and having to his own use one half of all the income and profits of the same, and one half of all the proceeds received from the sales of such portions as were sold, and paying one half of all the taxes assessed upon said estate, and one half of all the money expended for improvements, or otherwise on account of the same, down to the time of the decease of Wilkins, in January, 1855.

The bill then sets forth, at length and in detail, the manner in which the real estate was managed and enjoyed by Wilkins and the complainant; that buildings were from time to time erected by them thereon, at their joint expense; that a portion of the land was sold and the deed signed by both, and the purchase money equally divided between them; that wood and timber were sold from the premises, and the proceeds equally divided; that rents and profits to a large amount have been shared equally between them; that the occupation and enjoyment has been in common and equal; and that the property has always been taxed to "Wilkins and Kidder," and the taxes been equally paid by them.

The bill further alleged what we take to be a request by the complainant for a division of the property between them in 1853, and a promise by Wilkins that it should be made; but that he failed to do it. And that consequently the legal title to the property was in him at the time of his death. Also a demand upon the defendants in May, 1855, for a conveyance of the complainant's rights in the estate, and a refusal by them to make the same.

The bill prays that the contract and agreement entered into between Wilkins and the complainant may be performed, and that the defendants may be decreed to make, execute and deliver, or cause to be made, executed and delivered, to the complainant, a good and sufficient conveyance of all and singular the real estate described, to which the complainant claims that he is of right entitled; and that the defendants be enjoined from setting up any claim or title to the undivided interest of the complainant in the premises. There is also a prayer for general relief.

The defendants in their answer state specifically that they have no certain knowledge in regard to the matters set forth in detail in the bill, and they therefore do not admit the same. They however say, " that they have been informed and believe, and therefore admit, that the said John S. Kidder occupied the said real estate jointly with said Wilkins, and participated equally with him in the management and income thereof, as set forth in said bill; and that he paid one half of the taxes assessed upon the same, and one half of the money expended for improvements on the same; and that said real estate has been taxed to them jointly by the authorities of Manchester, as set forth in the bill." And they admit that Wilkins died possessed of sufficient estate, free from all adverse claims and incumbrances, independent of and beyond the claims of the complainant as set forth in his bill, to pay all lawful claims and demands against him, all the expenses of administration, and all the particular legacies and bequests made in and by the will.

They say further, that the several promises and agreements set forth in the bill, and alleged to have been made and entered into by Wilkins and the complainant, were not reduced to writing pursuant to the statute, and are therefore void as against the defendants, and they claim the same benefit as if they had pleaded the statute in this case.

The defendants, after making their answer, filed a cross-bill against the complainant for a discovery, and with minuteness and particularity interrogated him as to all the material matters set forth in the original bill and answer.

The complainant, in his answer to the cross-bill, stated substantially the same case as alleged in his bill; answering the various matters concerning which he was interrogated. Upon interrogatories to the points touching the loan of the money, the conveyance of the land, the re-payment of the loan, occupancy of the land, &c., he answered that the lands were conveyed to Wilkins by an absolute deed for the consideration of $300; that Wilkins then and afterwards promised and agreed that he would

re-convey the same to the complainant, upon the payment of the $300 and interest; that the same was paid and satisfied on or before the 20th day of November, 1835; that he then went into possession of the property, and held the same in common with Wilkins up to the time of his death; that buildings were erected, and large improvements made upon some parts of the land at their joint expense; that wood and timber were sold upon other parts of the real estate, by himself and Wilkins, and the proceeds, amounting to a large sum, were equally divided between them; that all the taxes upon the property were paid by them in equal proportions, all the expenses incurred equally borne by them, and all the rents and profits shared by them alike.

The original bill and answer, and the cross-bill and answer, cover over fifty closely printed pages, and the whole appears to have been necessarily set forth in order to a full understanding of the case by the court. For a decision, however, we believe we have stated all that is necessary for a proper understanding of the points upon which, according to the view of the court, the case depends.

The evidence, which is somewhat voluminous, shows that a parol contract, as set up in the bill, for a re-conveyance of the lands to the complainant, was made. That it was agreed that Wilkins should convey to Kidder, when Kidder should pay the $300 and interest. It shows further that the money was paid, and that Wilkins frequently stated that the lands were owned by Kidder and himself. That Kidder, after the payment of the money by him, went into possession according to the contract, held the premises in common with Wilkins up to the time of his death, made extensive improvements upon the same, and shared the profits arising from the use and occupation; and that the amount of sales of the wood and timber was equally divided between them. And the general tendency of the evidence is to sustain the material allegations of the bill.

*Foster & Ayer, Bellows, D. Clark, and Bartlett,* for the complainant.

---

Kidder *v.* Barr.

---

I. The original bill and cross-bill are one cause, and are to be considered together. The latter is to be treated as a dependency upon the original suit. It is a part of the defence. Its object is to give a perfect reciprocity of proof to each party derivable from the answers of each other under oath. If taken as confessed, the cross-bill can be used as evidence, on the hearing, against the complainant in the original suit. The answer to the cross-bill may also be used as evidence by either party.

The defendants having appealed to the conscience of the complainant for the truth of what he has alleged in the original bill, it results as a reasonable and just consequence that the answer of the complainant under oath, so far as it is responsive to the bill, is evidence in the cause in proof of the facts of which the cross-bill seeks a disclosure. 3 Daniel's Chan. Plead. and Prac. 1742; 3 Greenl. Ev., secs. 250, 285.

II. A court of equity will decree the specific performance of a parol contract for the sale of land when such contract has been in part performed. A part performance of such contract will take it out of the statute; and possession by the vendee, with the assent of the vendor, will constitute such part performance. In such case the party is put into a situation which is a fraud upon him unless the agreement be performed. *Newton* v. *Swazey, et als.,* 8 N. H. 9; *Tilton* v. *Tilton,* 9 N. H. 385; *Ayer* v. *Hawks,* 11 N. H. 148; *Boyd* v. *Stone,* 11 Mass. 347; *Clinan* v. *Cook,* 1 Schoales and Lefroy 41; *Church* v. *Stirling,* 16 Conn. 388; *Hutchinson* v. *Hutchinson,* 4 Desau. 77; *Smith* v. *Brailsford,* 1 Desau. 350; *Mason* v. *Wallace,* 3 McLean 148; *Exparte Storer,* Davies 294; *Owings* v. *Baldwin,* 1 Md. Ch. Dec. 120; *Johnson* v. *McGruder,* 15 Miss. 365; *Hawkins* v. *Hunt,* 14 Ill. 42; *Dagan* v. *Colville,* 8 Texas 126.

A party who has conveyed land by a deed, absolute in form, but intended as a security for advances, there being an agreement to re-convey, on payment of the money lent or advanced, is as well entitled to specific performance as a party who has agreed for the purchase of land of which he never was the owner. *Freeman* v. *Cooper,* 14 Georgia 238; *Rose* v. *Bates,* 12 Missouri, 30–51.

In fact, he has a stronger claim to the interposition of a court of equity.

A purchaser who should fail to obtain specific performance would only lose the expected profit, and ordinarily it may be supposed that the price bears some relation to the value.

But the party who obtains a loan of money and gives an absolute deed as security, if he may not have his land back, loses what had actually belonged to him, and ordinarily the sum for which the land is pledged is greatly disproportionate to the value, as appears in this case.

There is here not merely part performance. There is full performance of the contract. The receipt of all the money is an admission of full performance of all for which the party holds the land, and a trust results from the transaction.

The complainant in this case can have no adequate remedy unless from a specific performance of the contract, and equity requires such relief to be granted, otherwise a statute designed to prevent fraud would itself become an instrument of fraud.

The terms and nature of the contract here alleged are clearly proved. The evidence is full, complete and satisfactory, *as to what land was purchased, that the consideration has been paid, that possession was delivered in pursuance of the contract,* and that *the complainant has made extensive and valuable improvements.*

These facts are all proved by the complainant's answer to the cross-bill. Inasmuch as this evidence is not controverted, in any particular, by the defendants in their answer to the original bill, or by any testimony in the case, it is to be regarded as conclusive.

III. If a specific performance could have been enforced had the vendor lived, his death does not impair the obligation of the contract, and a bill for specific performance may be maintained against the defendants. *Newton* v. *Swazey,* 8 N. H. 9.

IV. Where a verbal agreement has been entered into for the purchase or conveyance of real estate, upon the consideration money being paid and the admission of the vendee into possession, a trust immediately results by implication of law to the purchaser. The vendor, having no beneficial interest, becomes

a trustee for the purchaser till a conveyance of the legal estate is made.

The admissions of the vendor and other parol evidence are admissible as proof of the facts from which the trust is implied by law. 1 Greenl. Cruise 357 ; *Graves* v. *Graves*, 9 Foster 143 ; *Astor* v. *L'Amoreux*, 4 Sandf. Sup. Ct. 524 ; *Reid* v. *Fitch*, 11 Barb. Sup. Ct. 399.

Such a trust resulted by operation of law from the facts in this case, and it was not necessary that the trusts should be created or declared by any instrument signed by the party. The case falls within the exception contained in our statute. Comp. Stat. 290, sec. 13.

Trusts are enforced not only against those persons who are possessed of trust property, but also against all persons who came into possession of the property bound by the trust, as heirs, executors or devisees. Whoever so comes into possession is bound to the execution of the trust. 1 Story's Eq. Juris., secs. 533, 534.

V. By the statute of July 1, 1829, in force here at the time of this transaction, it was required that all express declarations and creations of trusts should be *manifested* and *proved* by some writing signed by the party, differing from our present statute, which requires that they shall be *created* or *declared* in writing. Laws, Ed. of 1830, 535 ; Comp. Stat. 290.

It is said, however, that the old statute is unchanged in its legal effect by the present. *Graves* v. *Graves*, 9 Foster 141.

If this, then, were to be regarded as a case of an express declaration of a trust, the law applicable to it would only require that there should be evidence in writing proving that there was such a trust. 1 Greenl. Cruise 355 ; *Maccubbin* v. *Cromwell's Exrs.*, 7 Gill & John. 157 ; *Pratt* v. *Ayer*, 3 Chand. (Wis.) 265 ; *Unitarian Society* v. *Woodbury*, 2 Shepley 281.

A declaration of trust requires no particular form. The statute will be satisfied if the evidence be in writing under the hand of the trustee, however informal and however long subsequent to the creation of the trust; and it is not material whether the

writing be made as evidence of the trust or not. 1 Greenl. Cruise 355, note 1; *Barrell & a.* v. *Joy*, 15 Mass. 223; Adams' Eq. 28; *Fisher* v. *Fields*, 10 Johns. 505; *Hutchinson* v. *Tindall*, 2 Green. Ch. 357; *Chamberlin* v. *Thompson*, 10 Conn. 242; Lewin on Trusts, 30, 37; Hill on Trustees, 64, 65, 85, 86; *Pinket* v. *Wright*, 2 Hare. 120; *Smith* v. *Attersal*, 1 Russ. 266; *Kilpin* v. *Kilpin*, 1 Mylne & Keene 520; *Wheatley* v. *Parr*, 1 Keene 155; *Graham* v. *Lambert*, 5 Humph. 595; *Forster* v. *Hale*, 3 Ves. 696, 707, 708.

VI. Wilkins having received all the money for which the land was pledged, and admitted the plaintiff's right to a re-conveyance, the deed to him is now to be treated as an equitable mortgage, notwithstanding the statute of July 3, 1829. It is an equitable mortgage redeemed, and the plaintiff is entitled to the aid of the court upon that ground.

But for that statute the transaction would have constituted an equitable mortgage from its commencement. Hill on Trustees, 173; *Baldwin* v. *Banister*, 3 P. Wms. 251, n. A.; *Poole* v. *Puss*, 1 Beav. 600; *Wright* v. *Bates*, 13 Vermont 341; *Howe* v. *Russell*, 36 Maine 115; *McIntyre* v. *Humphreys*, 1 Hoff. Ch. 31; *Wetherell* v. *Hamilton*, 15 Penn. St. 195; *Bank of Westminster* v. *Whyte*, 1 Md. Ch. Dec. 536, and 3 Md. Ch. Dec. 508; *Miller* v. *Thomas*, 14 Ill. 428; *Vasser* v. *Vasser*, 23 Miss. 378; *Prewett* v. *Dobbs*, 13 S. & M. 431; *Hinson* v. *Partee*, 11 Humph. 587; 25 Vt. 273, 663; 17 Miss. 58.

The statute of July 3, 1829, and the provisions of it incorporated into the Revised Statutes, furnish no objection to treating the deed as a mortgage, after Wilkins received the money as if the transaction constituted a mortgage, and admitted that the land was redeemed and that the plaintiff was entitled to it. As a mortgage, it is a satisfied mortgage, and the title of the plaintiff relieved from the incumbrance. *Howe* v. *Russell*, 26 Me. 123.

Wilkins could waive the benefit and advantage of the statute. *Newton* v. *Swazey*, 8 N. H. 13, and cases cited; *Winn* v. *Al-*

*bert*, 2 Md. Ch. Dec. 169 ; *Small* v. *Owings*, 1 Md. Ch. Dec. 363 ; *Hollingsbee* v. *McKenzie*, 8 Georgia 457.

He did it most emphatically when he received the money by way of redemption, and admitted the plaintiff's right. The defendants, who represent him, cannot interpose the statute against his waiver. The waiver was complete long before his death. He could not himself have set up the statute after such waiver. It would have been a gross fraud in Wilkins had he attempted to hold the land after receiving the money, and he never did so.

*W. C. & S. G. Clarke*, and *Bell*, for the defendants.

It is stated, in the complainant's brief, that the defendants filed a cross-bill for discovery against the complainants, and the position is taken, that " the answer to the cross-bill may be used by either party."

The defendants in this case do not offer the answer of the complainant to the cross-bill, in evidence. Where the cross-bill asks some relief it is proper that the two causes should be heard together, but where it is for discovery only, there is nothing for a court to do after that discovery is had, and the bill should be dismissed. The answer of a party to a bill, is no more evidence for him than any other statements he may make. *Phillips* v. *Thompson*, 1 Johns. Ch., 131.

Our positions are these :

I. The agreement and contract set up is one that if it had not been for the statute passed July 3, 1829, in force at the time of this alleged agreement, would have been a mortgage.

By that statute it is in substance provided : That no estate shall be defeated or incumbered by any agreement whatever, unless such agreement or writing of defeasance shall be inserted in the condition of said conveyance and become part thereof. See Laws of N. H., ed. of 1830, title 105, sec. 4. See, also, *Butler* v. *Catling*, 1 Root 310 ; *Hutchinson* v. *Tindall*, 2 Greenl. Ch. 357 ; *Connor* v. *Chase*, 15 Vt. 764; *Thomas* v. *McCormick*, 9 Dana 108.

The deed of March 18, 1835, of Kidder to Wilkins, is an absolute one.

The complainant in his brief, however, contends that this transaction is to be treated as a mortgage, notwithstanding the statute of 1829, because Wilkins had received the money for which the land was pledged; but the very point of the statute is, that no deed shall be defeated by any agreement unless it is inserted in the conveyance; and the court can not receive parol testimony to show that it was so pledged. The whole argument of the complainant in his sixth point rests upon the assumption that here was a mortgage by parol. But the statute says no mortgage shall be by parol, and how can the court recognize or know that such agreement was made?

The suggestion, also, that Mr. Wilkins had waived the benefit of the statute, is equally untenable. A party, when he admits the agreement and does not claim the benefit of the statute of frauds, is deemed to have waived it. That is not this case, however. And again, how can the court recognize that money was received in redemption when they can take no knowledge of the precedent parol defeasance? The whole argument of the complainant pursues itself in the same circle. It has neither correct premises or logical conclusions.

II. The complainant contends further, however, that here is a parol contract for the sale of the lands claimed by the bill, from Wilkins to Kidder, and that contract has been so far executed that this court should apply the doctrine of part performance, and thus except it from the operation of the statute of frauds.

The doctrine of part performance cannot be applied to take this case out of the statute of frauds any more than it could to establish a trust. See *Rathburn* v. *Rathburn*, 6 Barb. Sup. C. R. 98.

The doctrine is that the contract must be distinctly and fully stated in the bill, and proved as stated; and the proof of the contract must be clear, full, and unequivocal. *Anthony* v. *Leftwich*, 3 Rand. 246; *Aday* v. *Echols*, 18 Ala. 353; *Goodwin* v. *Lyon*, 4 Port. 397; *Parkhurst* v. *Van Courtlandt*, 1 Johns. Ch.

274; *Hall* v. *Hall*, 1 Gill 382; *Miller* v. *Colton*, 5 Geo. 341; *Shepherd* v. *Shepherd*, 1 Md. Ch. Dec. 244; *Small* v. *Owings*, Ib. 363; *Beard* v. *Linthicum*, 1 Ib. 345; *Waters* v. *Howard*, 8 Gill 262; *Lindsay* v. *Lynch*, 2 Sch. and Lef. 8. And that is not done in this case. But to enable a court of equity to decree specific performance of a parol contract, it must appear, that if the contract should not be performed, the party asking relief would suffer an injury amounting to a fraud upon him. That the only ground on which the court acts is fraud. *Clinan* v. *Cooke*, 1 Sch. & L. 41; *O'Reilley* v. *Thompson*, 2 Cox 273; *Anderson* v. *Chick*, 1 Bail. Eq. R. 118; *Lowry* v. *Tew*, 3 Barb. Ch. 407; *Exparte Storer*, Davies 294; *Brewer* v. *Brewer*, 19 Ala. 481; *Small* v. *Owens*, 1 Md. Ch. Dec. 363; *Keats* v. *Proctor*, 1 Pike 391; *Meach* v. *Perry*, 1 Chip. 182.

The act of part performance must be an act not simply ancillary or preparatory, it must be direct, and intended to be a substantial part of the performance of an obligation created by the contract, and would not have been done if it were not for the contract; and it must be in execution of a specific and certain agreement charged in the bill. 2 Parsons on Contracts 340; *Davenport* v. *Mason*, 15 Mass. 85; *Anderson* v. *Chick*, 1 Bail. Eq. 118; *Church of the Advent* v. *Farrow*, 7 Rich. Eq. 378. It is not enough that the act is evidence of some agreement, but it must be unequivocal and satisfactory evidence of the particular agreement charged in the bill. *Phillips* v. *Thompson*, 1 Johns. Ch. 132; *Beard* v. *Linthicum*, 1 Md. Ch. Dec. 345; *Owings* v. *Baldwin*, Ib. 120. It must be some positive act done in reference to the agreement, and intended to be in execution of it. *Hatcher* v. *Hatcher*, 1 McMullen, 311, 318; and it must distinctly appear what the agreement is, *and* that the acts are done in pursuance of the identical contract set up. *Stoddard* v. *Tuck*, 5 Md. Ch. 18; S. C. 4 Md. Ch. 475.

Where the act relied on is possession, and acts done in pursuance of the possession, the possession must unequivocally appear to be in pursuance and consequence of the contract, and distinctly referable and solely applicable to it. *Tibbs* v. *Barker*, 1

Blackf. 58; *Johnston* v. *Glancy*, 4 Blackf. 94; *Reed* v. *Reed*, 12 Penn. St. R. 117; *Owings* v. *Baldwin*, 1 Md. Ch. Dec. 120; *Kine* v. *Balfe*, 2 Ball & B. 348; *Byron* v. *Romaine*, 2 Edw. Ch. 445; *Lowry* v. *Tew*, 3 Barb. Ch. 407; *Harris* v. *Knickerbocker*, 5 Wend. 638; *Carlisle* v. *Fleming*, 1 Harring. 421; *Lord* v. *Underdunck*, 1 Sand. Ch. 46. It will only be construed as part performance when the party in possession might be treated as a trespasser. *Smith* v. *Smith*, 1 Rich. Ch. 130; *Duvall* v. *Myers*, 2 Md. Ch. Dec. 401. Thus where a party was in possession of land before, as well as after a parol contract for the purchase of it, such subsequent possession will not amount to part performance. See *Frame* v. *Dawson*, 14 Ves. 386; *Wills* v. *Stradling*, 3 Ves. 381; *Johnston* v. *Glancy*, 4 Blackf. 99; *Hatcher* v. *Hatcher*, 1 McMullen 311; *Christy* v. *Barnhart*, 14 Penn. St. 260; *Jones* v. *Peterman*, 3 Serg. & R. 543; *Byron* v. *Romaine*, 2 Edw. Ch. 445; *Morphett* v. *Jones*, 1 Swants. 181; *Atkins Heirs* v. *Young*, 12 Penn. St. R. 15. Where possession is relied on as part performance, the complainant must prove delivery of possession in pursuance of the agreement. *Givens* v. *Calder*, 2 Des. 190. The acts of part performance must unequivocally result from the agreement alleged. *Willard* v. *Ramsdell*, Harring. Ch. 373. Possession by a party implies some kind of a contract and authorizes inquiry into its terms; but unless the terms of the contract are clearly proved it does not authorize a decree. *Morphett* v. *Jones*, 1 Swanst. 182; *Toole* v. *Medlicott*, 1 Ball & B. 404. See, also, *Blakenay* v. *Furguson*, 3 Eng. 272; *Hood* v. *Bowman*, 1 Freeman (Miss.) Ch. R. 290. All these requirements as to the acts amounting to part performance must be clearly and distinctly proved.

In the late case of *Moore* v. *Small*, 19 Penn. St. R. 461, it was held that every parol contract was within the statute of frauds, unless there had been such acts of part performance as could not be compensated in damages. In the present case the complainant has received from this property about two thousand dollars more than he has expended, not reckoning the land deeded to him in 1838. See, also, *Wack* v. *Sorber*, 2 Whart. 387.

In addition we refer the court to the cases of *Newton* v. *Swazey*, 8 N. H. 9; *Tilton* v. *Tilton*, 9 N. H. 385; *Ayer* v. *Hawks*, 11 N. H. 148; *Powers* v. *Hale*, 5 Foster 145; *Graves* v. *Graves*, 9 Foster 129.

It also seems well settled, no matter how clear the contract is in its terms, or how clearly proved; whether it be by parol or in writing, and all the requirements of the law complied with, that it is still within the discretion of the court, under all the circumstances of the case, to refuse a decree of specific performance. *Joynes* v. *Statham*, 3 Atk. 389; *Anthony* v. *Leftwich*, 3 Rand. 238; *St. John* v. *Benedict*, 6 Johns. Ch. R. 111; *Omerod* v. *Hardman*, 5 Ves. 734; and this is said to be the law in many if not most of the cases previously cited, and by the various text writers.

So also a court of equity will consider lapse of time, and take cognizance of delay on the part of the complainant in claiming his right. *Hertford* v. *Boore*, 5 Ves. 720; *Alley* v. *Deschamps*, 13 Ves. 228; *Hamilton* v. *Grant*, 3 Dow 33; *Milward* v. *Thanet*, 2 Ves. Jr. 720; *Vail* v. *Nelson*, 4 Rand. 478. Relief ought not to be given or specific performance decreed where the breach of covenant or the delay has been willful. *Hill* v. *Barclay*, 18 Ves. 63; *Loyd* v. *Collet*, 4 Ves. 690, note; *Reynolds* v. *Pitt*, 19 Ves. 143. Delay is a bar; *Bryan* v. *Loftus*, 1 Rob. Va. R. 12; and this though the purchaser had occupied the land and paid part of the purchase money. *Higby* v. *Whittaker*, 8 Ham. 198. *Smith* v. *Carney*, 1 Litt. 295.

Here is a great lapse of time between the making of the alleged contract and the commencement of this suit. The contract is alleged to have been made either March 18th, or November 20th, 1835, and the bill was filed May 10, 1855 — almost twenty years after. And, also, this was delayed until the death of one of the contracting parties; but almost as soon as his death occurs proceedings are commenced.

Can the complainant here be considered as a trespasser or wrong-doer in his occupation of this land, in case his bill is dismissed?

The complainant alleges in his bill that it was by the permis-

sion and consent of Mr. Wilkins that he entered on this land. If this be so, there was then a license to enter and occupy, and he cannot be treated as a wrong-doer until that license is revoked.

He is better off on account of his occupation than he would otherwise have been; and we see no way whereby he will suffer an injury amounting to a fraud, if a decree is not made in his favor.

The testimony in the case is of the loosest and most unsatisfactory kind.

But all the acts of the complainant and of Mr. Wilkins can be readily explained in a simple and straight forward manner.

The sale by the complainant to Mr. Wilkins was an absolute one, as it purports to be, and as the price paid, fully the market value of the complainant's interest, tends to show it was. When the Amoskeag Manufacturing Company commenced their operations at Manchester, the fall after this sale, and the value of real estate rose in the market, the complainant was naturally sorry that he had sold his real estate, and thereupon expressed his regrets to Mr. Wilkins; and Mr. Wilkins told him he should not suffer on account of selling to him (Wilkins) rather than some one else. That it was in accordance with this assurance that Mr. Wilkins gave portions of this property to the complainant, and permitted him to receive the income thereof, and not on any such unbusiness like and improbable agreement as the one set up by the complainant. So, also, an intention to leave this property to the complainant, at his decease, would easily induce Mr. Wilkins, he permitting the complainant to occupy it, to speak of it as the complainant's. This view of the whole case is supported by the testimony offered by the defendants; and on all the testimony seems more reasonable than any other.

A court of equity will not specifically enforce a parol gift or voluntary agreement. *Evans* v. *Pattle*, 19 Ala. 399; and this, though accompanied by delivery of possession. *Pinkard* v. *Pinkard*, 23 Ala. 649; *Goodwin* v. *Lyon*, 4 Port. 297; see, also, *Brownsmith* v. *Gilborne*, 2 Stra. 738; *Wack* v. *Sorber*, 2 Whart.

387; *Mercer* v. *Stark*, Walker's R. 457; *Shepherd* v. *Shepherd*, 1 Md. Ch. Dec. 244; *Rand* v. *Long*, 4 Yerg. 68.

We submit, then, that on the ground of part performance of a parol contract for the sale of lands, the complainant is not entitled to a decree.

III. The complainant further claims, that where a verbal agreement has been entered into for the purchase or conveyance of real estate, upon the consideration money being paid and the admission of the vendee into possession, a trust immediately results by implication of law to the purchaser.

To hold this doctrine would overthrow all the settled law relative to parol contracts for the sale of land.

It is well settled at present that the payment of the purchase money is not sufficient to take a case out of the statute. 2 Story's Eq. Jur., sec. 760. Possession by a vendee is under some circumstances considered an act of part performance, but unless there is a part performance of the contract on the part of the party asking relief, a court of equity cannot decree in his favor.

It is well settled that the court acts on the ground of fraud and fraud only, but, admitting the complainant's proposition, the ground is changed from fraud to trust.

A trust relating to real estate cannot be proved by parol, nor will the doctrine of part performance be applied to take such a case out of the statute. *Rathburn* v. *Rathburn*, 6 Barb. S. Ct. 98.

The whole foundation of a resulting trust is, that the consideration moves from one party, while the property passes to a third person. In such a case, he who has the property will be adjudged the trustee of the party from whom the consideration moves. See notes to *Dyer* v. *Dyer*, in Leading Cases in Eq., vol. 1, 187, 200. But in the case of a sale of land, if the money is paid after the conveyance there is no such trust. *Bottsford* v. *Burr*, 2 Johns. Ch. 405.

When no trust appears on the face of the deed, nor any manifestation or evidence of it by writing, parol evidence is inadmissible to prove it. *Movan* v. *Hays*, 1 Johns. Ch. 339; see,

also, *Dean* v. *Dean*, 6 Conn. 285; *Rathburn* v. *Rathburn*, 6 Barb. Sup. Ct. R. 98; *Freeman* v. *Kelly*, 1 Hoff. Ch. 90; *Steere* v. *Steere*, 5 Johns. Ch. 1. There is no resulting use or trust for the benefit of the grantor, if a consideration is stated in the deed, or if a use is expressly limited in the deed of the whole property. *Graves* v. *Graves*, 9 Foster 129.

IV. The complainant cannot have a decree in his favor on the ground of a contract to convey to him by Mr. Wilkins, unless he has clearly made out that the contract applied to all the pieces of land claimed in his bill. *Tilton* v. *Tilton*, 9 N. H. 385.

EASTMAN, J. After the complainant filed his answer to the cross-bill, the defendants took exceptions to the answer. These exceptions at a former term of the court were considered and overruled. The defendants thereupon made a motion that their cross-bill be dismissed, to which the complainant objected. That motion is still pending, and we propose to consider it first. If the cross-bill is dismissed, the answer of course follows, and the parties stand as though no cross-bill had been filed.

A cross-bill is a bill brought by a defendant against a plaintiff, or other parties in a former bill depending, touching the matter in question in that bill. Mitford's Eq. Pld., sec. 389; 3 Danl. Ch. Prac. 1742; Story's Eq. Pld., sec. 389; *White* v. *Buloid*, 2 Paige's Ch. 164.

It is treated as a mere auxiliary suit, or as a dependency upon the original suit. Story's Eq. Pld., sec. 399; *Slason* v. *Wright*, 14 Vt. 208.

A bill of this kind is usually brought either to obtain a necessary discovery of facts in aid of the defence to the original bill, or to obtain full relief to all parties in reference to the matters of the original bill. Mitford's Eq. Pld. 81; Story's Eq. Pld., sec. 389; 3 Danl. Ch. Prac. 1742.

A cross-bill for a discovery arises from a settled rule in equity that the plaintiff in a suit cannot be examined as a witness in that suit, and if his testimony is wanted by a defendant as to any material facts, it can only be obtained by a cross-bill. 1 P. Wm's 595; Story's Eq. Pld., sec. 390.

A cross-bill, therefore, where the answers in both suits are used, gives a perfect reciprocity of proof to each party, derivable from the answers of each. Story's Eq. Pld., sec. 390 ; 3 Danl. Ch. Prac. 1742. And when the original bill and cross-bill are both filed, both are usually heard together. Story's Eq. Pld., sec. 395 ; 1 Smith's Ch. Pr. 468; 3 Danl. Ch. Pr. 1751.

If a cross-bill is taken as confessed, it may be used as evidence against the plaintiff in the original suit, on the hearing, and will have the same effect as if he had admitted the same facts in an answer. 3 Danl. Ch. Pr. 1743 ; *White* v. *Buloid,* 2 Paige 164. And where a cross-bill is answered, and the matter ter is brought to a hearing, and the answer used, it is evidence for the party making it, so far as it is responsive to the bill.

Such are some of the general principles in regard to cross-bills. When, as in the present case, the bill is brought by the defendants only for a discovery of facts in aid of the defence, the object is to obtain evidence which cannot otherwise be procured. The plaintiff cannot be examined as a witness, and this is the only mode by which his testimony can be obtained. His answer to the cross-bill is treated as the evidence of the original defendant, which he may use or not ; and unless he reads it, it is not before the court for consideration. This point was distinctly presented and settled in *Phillips* v. *Thompson,* 1 Johns. Ch. 131, where *Kent,* Chancellor, says, that the plaintiff cannot read his own answer to a bill of discovery in a cross suit, unless the defendant chooses first to produce it in evidence ; that the plaintiff cannot testify for himself unless at the instance and on the call of the defendant ; and it is for the defendant to determine whether the answer is to be admitted as evidence or not.

The rule appears to be this, that the plaintiff in the original suit, being required to make out his case by evidence, cannot use his own answer to the cross-bill as such evidence, unless the original defendant, having taken that answer as his evidence, shall first use it. If he does, it then becomes evidence for both parties.

In the present case, the defendants filed their cross-bill for the

sole purpose of procuring a discovery in aid of their defence. The plaintiff has answered their bill; but the answer is such that they do not desire to use it on the hearing, but on the contrary move to dismiss their own bill; and, upon an examination of the question, we see no objection to granting the motion. As the answer is not to be used, the object of the cross suit is at an end. Nothing is to be gained by either party by retaining it upon the docket, and the defendants may have the bill dismissed.

We pass now to the consideration of the more particular merits of the case.

The object of the complainant's bill is to enforce against the representatives of Wilkins, being the executor and trustees named in his will, a parol contract for the conveyance of the lands particularly described in the bill.

By our statute this court has power to hear and determine, as a court of equity, all cases of trust, fraud, accidents or mistakes, and in suits to compel the specific performance of contracts and for discovery. Rev. Stat., ch. 171, sec. 6. And a specific performance of a parol agreement for the conveyance of land may be decreed, if the statute of frauds be not interposed. *Newton* v. *Swazey*, 8 N. H. 9. And where there is an effectual agreement for the sale of an estate by the owner, the heirs and legal representatives of the vendor are bound to perform it, and it may be enforced against the vendee. The death of either of the parties to the contract does not impair its obligation. *Newton* v. *Swazey*, 8 N. H. 9; 1 Madd. Ch. 368; *Baden* v. *Countess of Pembroke*, 2 Vernon 215; *Lacon* v. *Mertins*, 3 Atkyns 1.

This court, then, has jurisdiction of the case, and there is no difficulty in sustaining the suit against the defendants as the executor and trustees by the will of Wilkins. The case is to be determined as though brought against him in his lifetime.

A careful examination of the evidence satisfies us that the contract set up in the bill was undoubtedly made; that Wilkins agreed that he would convey to Kidder the lands, upon the payment of the $300 and interest. The rule that the contract must

be established as charged, (*Harris* v. *Knickerbocker*, 5 Wend. 638 ; *Tilton* v. *Tilton*, 9 N. H. 385 ; *Phillips* v. *Thompson*, 1 Johns. Ch. 146,) is fully complied with by the evidence. These matters are shown by the direct and positive testimony of Riddle, who was present when the contract was made, and by the strong confirmatory testimony of Perkins Cheney, Lane and Straw, who testify to the repeated declarations and admissions of Wilkins in regard to the matter.

The evidence also establishes the fact that the money was duly paid by Kidder to Wilkins.

But the defendants in their answer set up the statute of frauds, and insist that the contract, not being in writing, is void ; and they claim the same benefit from their answer as if they had pleaded the statute. This they have the right to do ; for the statute of frauds may be relied on in defence to a bill for specific performance, although the defendant admits the agreement, if he insists upon the statute in his answer. *Harris* v. *Knickerbocker*, 5 Wend. 638 ; 6 Vesey 39.

The contract which this complainant seeks to enforce was not in writing. Although there were papers signed by Wilkins relative to these lands, as set forth in the bill, yet they were all signed long subsequent to the contract, and are only evidence of what the contract was. The contract upon which the plaintiff must rely for a decree was made in 1835, and it was by parol only. It is, therefore, liable to the condemnation of the statute, and cannot be enforced unless there was something in the transactions between the parties that can take it out of the operation of the statute.

It is well settled that a part performance of a parol agreement for the sale of land will take it out of the statute, and that a specific performance in such cases will be decreed. 2 Story's Com. on Eq., sec. 759 ; Fonbl. Eq. 260 ; Sug. Law of Vendors 83 ; *Newton* v. *Swazey* 8 N. H. 9 ; *Tilton* v. *Tilton*, 9 N. H. 385 ; *Ayer* v. *Hawkes*, 11 N. H. 154 ; *Harris* v. *Knickerbocker*, 5 Wend. 638 ; 1 Madd. Ch. 376 ; 1 Vernon 160, note ; 3 Vesey 381 ; 18 Vesey 328 ; *Parkhurst* v. *Van Cortlandt*, 14 Johns. 15.

As to what shall amount to part performance the authorities are not all agreed. By some it is held that payment of a substantial part of the purchase money is a part performance sufficient to take the case out of the statute. *Thompson* v. *Todd*, 1 Peters 388; *Mann* v. *Melbourne*, 4 Vesey 720; *Ball* v. *Andrews*, 4 Dallas 152. But Lord *Redesdale* held that payment of the purchase money will in no case amount to a part performance, and such appears to be the present doctrine. *Clinan* v. *Cooke*, 1 Schoales & Lefroy 40, 41; do. 129; Sugden on Vendors, ch. 3, sec. 3; *Lake* v. *Morris*, 2 Ch. Cases 135; 2 Story's Com. on Eq., sec. 760. Story, in the section referred to, says that the doctrine that payment was such part performance as took the case out of the statute, was open to much controversy, but that it is now finally overthrown.

The governing rule is, that nothing is to be considered as a part performance which does not put the party into a situation which is a fraud upon him, unless the agreement be performed. *Tilton* v. *Tilton*, 9 N. H. 390; Fonbl. Eq. 260; 2 Story's Com. on Eq., sec. 761.

But possession by the vendee, having unequivocal reference to the contract, has always been considered an act of part performance. *Ayer* v. *Hawkes*, 11 N. H. 154; *Marphett* v. *Jones*, 1 Swanston 181; *Harris* v. *Knickerbocker*, 5 Wend. 638; 1 Madd. Ch. 380; *Newton* v. *Swazey*, 8 N. H. 9.

Thus, it is said, if upon a parol agreement a man is admitted into possession, he is made a trespasser, and liable as such, if there is no agreement valid in law or in equity to protect him; and that a stronger case exists, where a vendee, upon a parol agreement for a sale of land, makes improvements upon the estate in the confidence of a due completion of the contract: That in such a case there would be a manifest fraud upon the party in permitting the vendor to escape from a strict fulfillment of his contract. 2 Story's Com. on Eq., sec. 761; Fonbl. Eq. 158. And in *Newton* v. *Sawyer*, *Parker*, C. J., says, that it is well settled that if a party is let into possession, and has proceeded to make valuable improvements, it is a part performance within the rule.

Has there been a part performance in the present instance, so as to take this case out of the statute, according to the rule? We think it quite evident that there has. Passing by the payment of the consideration by Kidder, which we have already stated is proved, the evidence establishes the fact that Kidder was let into possession of the premises in the fall of 1835, and continued in the uninterrupted enjoyment of the same, as tenant in common with Wilkins, up to the time of the decease of the latter, in January, 1855. During this time he made extensive and valuable improvements upon portions of the land, expending large sums of money thereon, and exercised all the rights of ownership over the whole. He united with Wilkins in the conveyance of a piece of the land, and received one half of the consideration. He also united in the sale of wood and timber from other portions, and received his share of the avails; and the rents and profits arising from the various tenements which he and Wilkins had built upon the land at their joint expense, were equally divided between them. This the evidence fully establishes. It does not appear that Wilkins ever demanded any rent of Kidder for the use of the land, or that any was ever paid, but on the contrary Wilkins repeatedly and on various occasions declared the property to belong to him and Kidder, and the whole tendency of the evidence goes to show that the entry by Kidder was in pursuance of the contract made by Wilkins to convey. Add to this the admission in the answer of the defendants that "Kidder occupied the said real estate jointly with said Wilkins, and participated equally with him in the management and income thereof, as set forth in said bill, and that he paid one half of the taxes assessed upon the same, and one half of the money expended for improvements on the same, and that said real estate has been taxed to them jointly, as set forth in said bill," and we cannot doubt that a case of part performance is clearly made out.

The theory of the defendants, that Kidder, having been the ward of Wilkins, the latter, from friendship, and from the interest which he took in Kidder, permitted him to occupy and receive

the profits of the land, is plausible, but it is overborne by the evidence. The reason why the conveyance was not made probably was that Wilkins thought that the property was more safe in his hands than in Kidder's, and that it would be more for Kidder's interest to have it remain as it was. Such is the inference which we draw from the evidence.

But whatever may have been the reason, we are satisfied that a case of part performance is well made out; that the rule governing cases of this kind is fully complied with, and that the prayer of the bill should be granted.

There are other grounds upon which our decision might perhaps be placed, which have been ably argued by counsel upon both sides; but the view which we have taken we think to be the correct one, as well as the more simple and direct. Wilkins took an absolute deed of the land, and the legal title was therefore in him. He made a parol agreement to re-convey upon being paid the $300 and interest. This agreement, the legal title being in him, was tantamount to a contract to convey, in the same manner as though Kidder had never owned the land.

The decree should be for Kidder's share of the three pieces of land, as set forth in the bill. The evidence is stronger as to "the acre" than as to the other pieces, but a part performance is made out as to the whole.

*Decree according to the prayer of the bill.*